# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JESSICA SHOLL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 05-2290-KHV |
| PLATTFORM ADVERTISING, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Jessica Sholl brings suit against PlattForm Advertising, Inc., alleging sexual harassment and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. This matter comes before the Court on Defendant's Motion For Summary Judgment (Doc. #22) filed March 13, 2006. For reasons stated below, the Court overrules defendant's motion.

**I.    Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material

fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Rule 56(e) also requires that "copies of all papers or parts thereof referred to in an affidavit be attached thereto or served therewith." To enforce this rule, the Court ordinarily does not strike affidavits but simply disregards those portions which are not shown to be

based upon personal knowledge or otherwise do not comply with Rule 56(e).  Maverick Paper Co. v. Omaha Paper Co., Inc., 18 F. Supp.2d 1232, 1234-35 (D. Kan. 1998).

**II.    Facts**

The following facts are either uncontroverted or, where controverted, construed in the light most favorable to plaintiff:[1]

PlattForm Advertising, Inc. ("PlattForm") is an advertising agency which employs between 100 and 300 persons in Olathe, Kansas.  From May 17 to September 3, 2004, plaintiff worked there as a graphic designer under manager Brian Hubbard.  Shortly after plaintiff began working, Hubbard told department employees that in the 1700s, people shaved their pubic hair and wore it around their waists to ward off disease.  Hubbard gave each employee a wig and instructed him or her to take it home and decorate it so that he or she could parade around the office the next day wearing a merkin.[2]  Plaintiff, who was the only woman in the department, complained to Hubbard and other employees that she was embarrassed to wear the wig.[3]  Plaintiff nevertheless decorated her wig with cat toys and paraded it around the office with the other employees in her department.

On a daily basis, plaintiff's co-workers played a comedy channel on XM satellite radio which aired sexual language.  In addition, plaintiff's co-workers used foul language daily – language which plaintiff found

---

[1]    The Court does not consider facts which the record does not support.  In addition, the Court does not consider facts which the parties include only the argument section of their briefs and not in the statement of facts as required by D. Kan. Rule 56.1.

[2]    A "merkin" is hair of the female genitalia or false hair for the female genitalia.  Webster's Third New International Dictionary 1414 (1993).

[3]    The record does not indicate whether Hubbard responded to plaintiff's complaint.

3

humiliating and degrading toward women. Chris Bundy, a co-worker, daily used the term "bitch" to refer to women. Bundy and another co-worker, Alex Morales, discussed pornographic websites at work. In doing so, they made humiliating statements about female body parts and discussed women in a negative manner.[4]

In front of Hubbard, plaintiff frequently asked her co-workers to refrain from sexually offensive speech and conduct. Hubbard did nothing about the complaints.

On one occasion, Tammy Platt, Hubbard's supervisor, told plaintiff that her work looked like a phallic symbol. Plaintiff had designed a business college logo which depicted two towers separated by a round dome. Platt made fun of plaintiff and encouraged other employees in the department to make fun of her.

On August 23, 2004, Hubbard told plaintiff that they were going to have "Titty Tuesday."[5] The next day, August 24, 2004, plaintiff complained of sexual harassment to Dory Winn, human resources manager. Specifically, plaintiff complained about the merkin incident, language in her department, Titty Tuesday and the radio station. Plaintiff stated that she did not complain to Platt because she felt that Platt would not sympathize with her since Platt had made fun of her and humiliated her in front of several people. Winn told plaintiff that she would handle the complaint and talk to Steve Booth, Chief Operating Officer,

---

[4]   The record does not reflect the statements which Morales and Bundy made.

[5]   The record does not explain what would happen on "Titty Tuesday." Defendant contends that women in the client services department scheduled the event as a joke and told Hubbard about it.

4

about it. Later that day, plaintiff gave two weeks' notice of her intent to resign.[6]

Winn reported plaintiff's complaint to Booth, who held a meeting with employees in plaintiff's department. Booth related plaintiff's complaints, stating that plaintiff felt uncomfortable because employees used the word "bitch" in her presence. Booth reviewed the harassment policy and instructed employees to act appropriately. Booth stated that he would investigate the matter and take appropriate action. Booth further warned employees that PlattForm would not tolerate inappropriate comments. Booth told the employees to treat each other fairly and that he would not tolerate any reprisal against plaintiff.

After plaintiff complained, she did not hear any foul language at work. Plaintiff contends that her co-workers ignored her and that this humiliated her. On September 3, 2004, plaintiff stopped working at PlattForm.

PlattForm has a policy against discrimination and harassment in the workplace. The policy provides as follows:

> PlattForm is committed to providing a work environment that is free from all forms of discrimination and conduct that can be considered harassing, coercive or disruptive, including sexual harassment. Actions, words, jokes or comments based on an individual's sex, race, color, national origin, age, religion, disability, sexual orientation or any other legally protected characteristic will not be tolerated.
>
> Sexual harassment is defined as unwanted sexual advances, or visual, verbal or physical conduct of a sexual nature. This definition includes many forms of offensive behavior and includes gender-based harassment of a person of the same sex as the harasser. The following is a partial list of sexual harassment examples:
> • Unwanted sexual advances.
> • Offering employment benefits in exchange for sexual favors.
> • Making or threatening reprisals after a negative response to sexual advances.

---

[6] Plaintiff had received an offer of employment from another company on August 24, 2004. The record is unclear whether plaintiff received the offer before she complained to Winn.

- Leering, making sexual gestures or displaying sexually suggestive objects or pictures.
- Verbal conduct that includes making or using derogatory comments, epithets, slurs or jokes.
- Verbal sexual advances or propositions.
- Physical conduct that includes touching, assaulting or impeding or blocking movements.
- Verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual or suggestive or obscene letters, notes or invitations.

Unwelcome sexual advances (either verbal or physical), requests for sexual favors and other verbal or physical conduct of a sexual nature constitute sexual harassment when: (1) submission to such conduct is made either explicitly or implicitly a term or condition of employment; (2) submission or rejection of the conduct is used as a basis for making employment decisions; or (3) the conduct has the purpose or effect of interfering with work performance or creating an intimidating, hostile or offensive work environment.

If you experience or witness sexual or other unwanted harassment in the workplace, report it immediately to your supervisor. If the supervisor is unavailable or you believe it would be inappropriate to contact that person, you should immediately contact the Human Resources Department or any other member of management. You can raise concerns and make reports without fear of reprisal or retaliation.

All allegations of sexual harassment will be quickly and discreetly investigated. To the extent possible, your confidentiality and that of any witnesses and the alleged harasser will be protected against unnecessary disclosure. When the investigation is completed, you will be informed of the outcome of the investigation.

Any supervisor or manager who becomes aware of possible sexual or other unlawful harassment must immediately advise the Human Resources Department or any member of management so it can be investigated in a timely and confidential manner. Anyone engaging in sexual or other unlawful harassment will be subject to disciplinary action, up to and including termination of employment.

Exhibit 6, <u>Memorandum In Support Of Defendant's Motion For Summary Judgment</u> ("<u>Defendant's Memorandum</u>") (Doc. #23) filed March 13, 2006. At the time of the merkin incident, plaintiff was not aware of the sexual harassment policy. She learned about it some time later during her employment.

**II.     Analysis**

Plaintiff claims that defendant subjected her to a discriminatorily hostile work environment and constructively discharged her because of her sex.  Defendant asserts that it is entitled to summary because (1) the alleged harassment was not based on sex; (2) the alleged conduct was not sufficiently severe or pervasive to constitute a hostile working environment; (3) plaintiff cannot show constructive discharge; and (4) defendant is entitled to judgment based on the affirmative defense outlined in Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998).[7]  Plaintiff responds that defendant's motion is premature and without merit.

     **A.     Whether Defendant's Motion Is Premature**

Plaintiff argues that defendant's motion is premature because (1) plaintiff has filed a motion to enforce discovery which seeks "basic facts concerning defendant's conduct;" and (2) the parties have not yet deposed several employees of defendant.  See Plaintiff's Opposition To Defendant's Motion For Summary Judgment (Doc. #33) filed April 19, 2006 at 1.  While plaintiff does not cite the rule, the Court analyzes plaintiff's argument under Rule 56(f), which allows a party to submit an affidavit stating "that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." In such a case, the Court may order a continuance to permit further discovery.  See id.  The Court has discretion

---

[7]     Defendant also argues in one paragraph that plaintiff has not alleged facts which support a claim of direct or vicarious liability.  See Defendant's Memorandum at 12.  Defendant's brief, however, does not discuss the law or facts in this regard.  The Court will not construct defendant's argument.  On this ground, defendant's motion is overruled.

Defendant also seeks summary judgment on any retaliation claim which plaintiff may assert.  See Defendant's Memorandum at 17-19.  In the pretrial order, plaintiff does not assert a claim for retaliation. See Pretrial Order (Doc. #38) filed May 25, 2006.  To this extent, defendant's motion is moot.

Defendant argues that it is entitled to summary judgment because plaintiff named and served "PlattForm Advertising" instead of "PlattForm Advertising, Inc."  At the pretrial conference, the parties stipulated that all prior pleadings and orders would be deemed amended to reflect the correct name.  See id. at 1 n.1.

7

whether to grant a Rule 56(f) motion. See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1553-54 (10th Cir. 1993). The rule is not "invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable." Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir. 1986). Plaintiff must state with specificity how the additional time would enable her to obtain evidence to oppose the motion for summary judgment. See Jensen, 998 F.2d at 1554.

Here, plaintiff has not presented an affidavit which states with specificity how additional time would enable her to obtain evidence to oppose the motion for summary judgment. Accordingly, plaintiff has not shown that a continuance is appropriate under Rule 56(f).[8]

### B. Plaintiff's Sexual Harassment Claim

Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986), the United States Supreme Court held that a plaintiff may establish a Title VII violation by proving that discrimination based on sex created a "hostile or abusive work environment." To constitute a hostile work environment, harassment must be sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment. Id. at 67.

[8] Moreover, it appears that the outstanding issues of which plaintiff complains are now resolved. Four days after plaintiff filed her response, the Court entered an order which denied plaintiff's motion to compel because the parties reported that they had resolved the dispute. See Doc. #35 filed April 23, 2006. In addition, plaintiff stated in her response that the parties planned to take the employees' depositions the following week, which presumably occurred. Plaintiff has not asked to supplement the summary judgment record with additional facts learned therein.

### 1.     Whether The Alleged Harassment Was Based On Sex

Defendant argues that plaintiff's claim must fail because the alleged conduct was not based on plaintiff's sex. In order to prevail on her claim, plaintiff must show that she was the object of harassment because of her gender. See Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998). Conduct which is overtly sexual may be presumed to be based on gender; actionable conduct is not limited, however, to behavior motivated by sexual desire. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). If sufficiently patterned or pervasive, any harassment or other unequal treatment of an employee which would not occur but for the sex of the employee may, comprise an illegal condition of employment under Title VII. Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987).

In arguing that the alleged harassment was not due to plaintiff's sex, defendant lists specific factual allegations and argues that they are not based on sex. See Defendant's Memorandum at 13-14. As an initial matter, even if some of the conduct were gender-neutral, it would be relevant to the Court's determination. See Chavez v. New Mexico, 397 F.3d 826, 833 (10th Cir. 2005). In evaluating whether a hostile work environment exists, the Court does not engage in a mechanical analysis which excludes consideration of gender-neutral conduct. See Penry, 155 F.3d at 1262. Rather, the Court considers the environment as a whole, including gender-neutral conduct, to determine the context in which the alleged harassment occurred. See Chavez, 397 F.3d at 833; Penry, 155 F.3d at 1262. Though all conduct is relevant to determine context, only conduct which occurred because of plaintiff's gender can be a basis for liability under Title VII. See Penry, 155 F.3d at 1262. When plaintiff produces evidence of both gender-based and gender-neutral harassment and a jury could reasonably view all of the allegedly harassing conduct

as the product of sex and gender hostility, it is for the fact finder to determine what inference should be drawn.  See Chavez, 397 F.3d at 833 (citing O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1102 (10th Cir. 1999)).

Defendant contends that "[t]he merkin incident was done exclusively by men," that it was not based upon sex, and that it was "an attempt to be fun by the employees."  Defendant's Memorandum at 13.  The record, however, establishes that the merkin incident did not involve only men; Hubbard had the entire department – including plaintiff – wear merkins around their waists.  The Court cannot conclude as a matter of law that instructing employees to wear a wig designed to depict hair of the female genitalia has nothing to do with gender.  See, e.g., Penry, 155 F.3d at 1263.

Defendant asserts that "[t]he radio playing a comedy station is not sexual discrimination as it is gender neutral."  Defendant's Memorandum at 14.  The record, however, provides no basis for the Court to make such determination.

Defendant contends that while Bundy used the term "bitch" to refer to women, he never directed it toward plaintiff.  This fact, however, does not make the conduct irrelevant.  See O'Shea, 185 F.3d at 1099 (10th Cir. 1999) (derogatory comments about women not directed at plaintiff relevant to hostile work environment determination).

Defendant contends that Bundy and Morales discussed pornographic websites between themselves and did not direct their comments toward plaintiff.  The derogatory comments are relevant regardless whether they were directed at plaintiff.  See id.

Defendant argues that Platt's statement that plaintiff's work looked like a phallic symbol is irrelevant because Platt is female and the statement was not based on sex.  See Defendant's Memorandum at 13.

10

Title VII does not preclude harassment claims based on actions by persons who are the same sex as plaintiff. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 7981 (1998). Also, the Court cannot conclude as a matter of law that Platt's statement had nothing to do with gender. See Penry, 155 F.3d at 1263 (supervisor's comment that mall roof looked like woman's breast had gender-related implications).

Defendant urges the Court to exclude the "Titty Tuesday" comment because female employees made it as a joke to Hubbard. See Defendant's Memorandum at 14. In ruling on defendant's summary judgment motion, the Court must accept plaintiff's assertion that Hubbard made the statement to her. Accordingly, for purposes of ruling on defendant's summary judgment motion, the Court finds that all of the alleged conduct was gender-based.

### 2. Whether The Alleged Conduct Was Sufficiently Severe Or Pervasive To Constitute A Hostile Working Environment

Defendant contends that no reasonable jury could conclude that plaintiff's work atmosphere was sufficiently severe or pervasive to constitute a hostile working environment. To survive summary judgment, plaintiff must show that a rational jury could find that her workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Davis v. U.S. Postal Serv., 142 F.3d 1334, 1341 (10th Cir. 1998). The Court determines the existence of such an environment by looking at the totality of the circumstances in the workplace, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

The Court evaluates these factors from both a subjective and an objective viewpoint. Harris, 510 U.S. at 21. The Court considers not only the effect which the discriminatory conduct actually had on plaintiff, but also the impact it would likely have had on a reasonable employee in plaintiff's position. See Davis, 142 F.3d at 1341.

Construed in a light most favorable to plaintiff, the record supports a finding that the following incidents occurred over a three-month period:

- In late May of 2004, Hubbard instructed plaintiff and the other employees in the department, all of whom were male, to decorate a wig and wear it as a merkin in a parade around the office.

- Plaintiff's co-workers played a radio comedy station which aired sexual language.

- Bundy used the term "bitch" daily to refer to women.

- Bundy and Morales discussed pornographic websites daily at work, making humiliating statements about female body parts and discussing women in a negative manner.

- Platt told plaintiff that her work looked like a phallic symbol and induced other employees to make fun of her.

- On August 23, 2004, Hubbard told plaintiff that they were going to have "Titty Tuesday."

These comments and conduct fall within the spectrum of what courts have found sufficient for a rational jury to find a hostile work environment. See, e.g., Walker v. UPS, 76 F. App'x. 881, 887 (10th Cir. Sept. 11, 2003) (eight incidents over eight-month period sufficiently pervasive to create objectively hostile work environment); O'Shea, 185 F.3d at 1098-1102 (reversing summary judgment where female plaintiff heard male co-worker compare his wife to Playboy magazine, describe dream involving naked

12

woman and make frequent derogatory comments about women; co-worker told other employees that plaintiff was going to file sexual harassment suit against him; and conduct caused co-workers to ostracize plaintiff and impeded her ability to do job); Smith v. N.W. Fin. Acceptance Inc., 129 F.3d 1408, 1413-15 (10th Cir. 1997) (six comments over 23-month period sufficient; comments included supervisor, within earshot of plaintiff's co-workers, telling plaintiff to "get a little this weekend" so she would "come back in a better mood;" calling plaintiff a "sad piece of ass;" and telling plaintiff she "would find a decent man if [she] just quit dating Mexicans"); Hurde v. Jobs Plus-Med, 299 F. Supp.2d 1196, 1212 (D. Kan. 2004); cf. Penry v. Fed. Home Loan Bank, 155 F.3d 1257, 1263 (10th Cir. 1998) (gender-related comments to plaintiff in three-year period too few and far between to be severe or pervasive). Accordingly, defendant is not entitled to summary judgment on this ground.

### 3. Constructive Discharge

Defendant contends that plaintiff cannot show constructive discharge. The Court disagrees. Constructive discharge occurs when an employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in plaintiff's position would feel compelled to resign. See Sandoval v. City of Boulder, 388 F.3d 1312, 1325 (10th Cir. 2004). The Court applies an objective test; neither plaintiff's subjective views nor defendant's subjective intent are relevant. See Tran v. Trustees. of State Colls. of Colo., 355 F.3d 1263, 1270 (10th Cir. 2004). The question is not whether plaintiff resigned because of defendant's actions, but whether plaintiff had any other reasonable choice but to resign in light of those actions. Id. Plaintiff bears a substantial burden to show constructive discharge. Plaintiff must show more than a hostile work environment; she must show that her working conditions were so intolerable that a reasonable person would have felt compelled to resign. See Penn. State Police v. Suders, 542 U.S. 129,

146-147 (2004).

Defendant argues that plaintiff cannot show constructive discharge because she found another job before she resigned. See Defendant's Memorandum at 16. Defendant, however, cites no case law which supports this conclusion. Defendant also contends that plaintiff did not complain until August 24, 2004, and that she failed to give defendant adequate time to fix the problem. See id. Construed in a light most favorable to plaintiff, the record supports an inference that plaintiff complained to her supervisor numerous times to no avail. On this record, a jury could conclude that plaintiff's working conditions were so intolerable that a reasonable person would have felt compelled to resign. Defendant's motion on this ground is overruled.

### 4. The Faragher Defense

By way of affirmative defense, defendant argues that even if it subjected plaintiff to a hostile work environment, it is shielded from liability under Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998). Under Faragher and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, (1998), an employer may escape vicarious liability for the harassing acts of its supervisory employees if it proves a two-pronged affirmative defense. See Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765. The defense can only be raised, however, if the harassing supervisor took no tangible employment action against plaintiff.[9] Harrison v. Eddy Potash, Inc., 248 F.3d 1014, 1024 (10th Cir. 2001) (citing Faragher, 524 U.S. at 807). If this condition is met, defendant can escape liability if it establishes by a preponderance of the evidence that (1) it

---

[9] Plaintiff argues that defendant cannot use the Faragher defense because her constructive discharge constitutes tangible employment action. In Pennsylvania State Police v. Suders, 542 U.S. 129 (2004), the United States Supreme Court held that an employer may utilize Faragher when an official act does not underlie the constructive discharge. See id. at 148. Here, plaintiff does not allege that an official act underlies the constructive discharge. Accordingly, defendant may raise the affirmative defense.

"exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765. To succeed on this defense, defendant must demonstrate that it is entitled to judgment as a matter of law on both prongs. See Ellerth, 524 U.S. at 765 (affirmative defense "comprises two necessary elements"); Harrison, 248 F.3d at 1024-26 (defendant must prove both prongs).

In this case, defendant has not shown undisputable evidence of both prongs. Under the first prong, defendant must show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765. Defendant asserts that it had "a policy for sexual harassment which had a non-retaliation provision and was effective." Defendant's Memorandum at 12. The record, however, contains no evidence which compels a finding as a matter of law that the policy was effective. Moreover, construed in a light most favorable to plaintiff, the record supports an inference that defendant did not timely communicate its policy to plaintiff.

Under the second prong, defendant must show that plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. Defendant argues that plaintiff did not complain about the alleged harassment until August 24, 2004. The record, however, supports an inference that plaintiff complained to her supervisor throughout the course of the alleged harassment. Defendant has not shown that it is entitled to judgment as a matter of law under Faragher.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #22) filed March 13, 2006 be and hereby is **OVERRULED.**

Dated this 17th day of July, 2006 at Kansas City, Kansas.

                                                  s/ Kathryn H. Vratil
                                                  Kathryn H. Vratil
                                                  United States District Judge